UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
VANESSA DIXON,                                  )
      Plaintiff,                               )
                                               )
    v.                                          )      Civil Action No. 01-11806REK
                                               )
INTERNATIONAL BROTHERHOOD                        )
OF POLICE OFFICERS; INTERNATIONAL               )
BROTHERHOOD OF POLICE OFFICERS,                 )
LOCAL 382; KENNETH LYONS, GERALD                )
FLYNN, JOHN LEARY AND DAVID PENDER              )
      Defendants.                              )
_____)

PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

      Pursuant to Rule 51 of the Federal Rules of Civil Procedure, the plaintiff, Vanessa Dixon,

requests that the Court instruct the jury as follows at the conclusion of evidence and arguments.

      Ms. Dixon reserves her right to supplement or amend these proposed instructions.

                             Respectfully submitted,
                             For the plaintiff,


                             /s/ Inga S. Bernstein_____
                             Inga S. Bernstein (BBO# 627251)
                             Monica Pastorok (BBO# 649306)
                             ZALKIND, RODRIGUEZ, LUNT & DUNCAN LLP
                             65a Atlantic Avenue
                             Boston, MA 02110
                             (617) 742-6020

April 15, 2005

**CERTIFICATE OF SERVICE**

I, Inga S. Bernstein, hereby certify that this day I have caused a copy of this document to be served by U.S. mail,
postage prepaid on:

      Joseph W. Monahan, III
      Monahan & Padellaro
      43 Thorndike Street
      Cambridge, MA 02141

                             /s/ Inga S. Bernstein_____

**INSTRUCTION NO. 1**

**Standard of Proof**

The burden of proof in this case is a preponderance of the evidence. What does "preponderance of evidence" mean? It simply means that something is more likely than not. How might you determine that something is more likely than not? In weighing the evidence on any particular count, think of a scale. If the evidence is equally divided and the scale does not tip in either direction, you must find for the defendant on that count. However, if you find that the evidence tips the scale, however slightly, in favor of Ms. Dixon, then it becomes more likely than not that the defendant engaged in the conduct Ms. Dixon alleges and you must find for Ms. Dixon.

Now, some of you have heard the phrase "proof beyond a reasonable doubt." That is the standard by which juries weigh evidence in criminal cases. That is ***not*** the proper standard in this case. In this case, the standard is preponderance of the evidence, or more likely than not.

**INSTRUCTION NO. 2**

**Overview – Elements of Title VII and c. 151B Discrimination Claims**

Ms. Dixon claims that she was subjected to discrimination by the IBPO and Local 382

based on her gender/sex, by the creation of a hostile environment on October 26-27, 1998.  State

and federal laws make it illegal for unions to engage in discrimination, including harassment

based on gender/sex.  In a case like this, gender or sexual harassment includes verbal or physical

conduct to which an individual is subjected because of her gender, that alters the terms,

conditions or privileges of union membership.  To recover, Ms. Dixon must prove:

1.     She was subjected to unwelcome sexual harassment, such as sexual advances, requests

       for sexual favors, or other verbal or physical conduct of a sexual nature

2.     The harassment was sufficiently severe or pervasive to cause the environment to become

       hostile, intimidating, or humiliating so as to interfere with her union membership, terms

       and/or conditions; and

3.     The harassment was both objectively and subjectively offensive, that is, a reasonable

       person in Ms. Dixon's position would find it hostile or abusive and Ms. Dixon, herself,

       found it hostile or abusive.

42 U.S.C. §§ 2000e-2(c)(1); G.L. c. 151B, § 4(2); *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)); *Melnychenko v. 84 Lumber Company*, 424 Mass. 285, 286 (1997) (noting that sexual harassment includes verbal or physical conduct of a sexual nature which has "the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment") (citing c. 151B); *Golleher v. Aerospace District Lodge 837*, 122 F. Supp. 2d 1053, 1060 (E.D. Mo. 2000) (noting that in the union context this claim is made out by "[a] showing of interference with her union membership terms, conditions or privileges[.]");  G.L. c. 151B, § 1(18); *College-Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 162, 508 N.E.2d 587, 591 (1987); *Ramsdell v. Western Mass. Bus Lines, Inc.*, 415 Mass. 677, 677–79, 615 N.E.2d 195–96 (1993); *Gnerre v. MCAD*, 402 Mass. 502, 507, 524 N.E.2d 84, 88 (1988); *Smith v. Brimfield Precision, Inc.*, 17 MDLR 1089, 1097–99 (1995).

**INSTRUCTION NO. 3**

**"Severe" or "Pervasive"**

In determining whether the defendants' conduct was severe or pervasive, you should consider the offensiveness of the conduct, as well as its frequency and severity. The more severe and offensive the conduct, the less frequent it has to be to create a hostile environment.  There is no absolute numerical standard by which to determine whether harassment has created a hostile environment.  To determine whether an environment is hostile or abusive one must look at all of the circumstances.  A single episode of harassment, if sufficiently severe, may create a hostile environment.

The type of conduct that may give rise to a hostile work environment includes, but is not limited to sexual jokes, derogatory gender references, unwelcome physical touching or sexual propositions.

When examining whether the conduct was hostile, intimidating, or humiliating, it must be viewed in the light of a reasonable person in Ms. Dixon's position.

*College-Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 158–59, 162, 508 N.E.2d 587, 589, 591 (1987); *Ramsdell v. Western Mass. Bus Lines, Inc.*, 415 Mass. 675, 677–79, 615 N.E.2d 192, 195–96 (1993); *Gnerre v. MCAD*, 402 Mass. 502, 507–08, 524 N.E.2d 84, 88–89 (1988); *Bowman v. Heller*, 66 FEP Cases 194, 201-202, (Mass. Super. Ct. No. 90-3269, July 9, 1993), *aff'd in part, vacated in part*, 420 Mass. 517, *cert denied*, 116 S.Ct. 682 (1995); *Ruffino v. State St. Bank & Trust Co.*, 908 F.Supp. 1019, 1036 n.28, 1038–39 nn. 34–35 (D.Mass. 1995); *see also Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (severity or seriousness of harassing conduct varies inversely with pervasiveness or frequency of conduct); *King v. Board of Regents of the Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir. 1990) (single act can be sufficient for finding of sexual harassment).

**INSTRUCTION NO. 4**

**Unions' Duty to Correct Discrimination**

Labor unions, like the IBPO and Local 382, have an affirmative duty to take corrective steps and to insure compliance with state and local anti-discrimination laws. A union's role in ratifying a discriminatory practice could be enough, standing along, to compel a finding of union liability.

*Donnell v. General Motors Corp.*, 576 F.2d 1292, 1300 (8th Cir. 1978) ("[l]abor unions . . . have an affirmative duty to take corrective steps and to insure compliance with Title VII, and a union's role in ratifying a discriminatory practice could be enough to compel a finding of union liability.") (citations omitted). *See also Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1304 (9th Cir. 1982) ("The union has an affirmative obligation to oppose employment discrimination against its members. If it instead acquiesced or joined in the Company's discriminatory practices, it too is liable to the injured employees."); *Egger v. Local 276, Plumbers & Pipefitters Union*, 644 F. Supp. 795, 802 (D. Mass. 1986) ("a labor organization has an affirmative duty to alleviate sex discrimination in employment").

**INSTRUCTION NO. 5**

**Union Liability for the Acts of Its Agents**

Unions, like the IBPO and Local 382, are liable both for their own actions and for the

actions of their agents.

The IBPO may be liable for the acts of Local 382 if it has an agency relationship with the

local, if it participates in the local's conduct, or if it authorizes, ratifies or approves that conduct.


*Abreen Corp. v. Laborers' International Union*, 709 F.2d 748, 757 (1st Cir. 1983) (a "regional or
international [union] . . . may be liable [for the acts of an affiliated local union] if it either has an
agency relationship with the local or independently participates in the local's illegal conduct.").
*See also Alexander v. Local 496, Laborers' International Union of North America*, 177 F.3d 394,
426-27 (6th Cir. 1999) ("[T]o be liable under Title VII, an international must 'participate in' or
'authorize, ratify, or approve' of the particular condition about which the plaintiff complains.")
(citing *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395 (D.C. Cir. 1988))
(some internal punctuation omitted).

**INSTRUCTION NO. 6**

**Overview – Elements of Title VII and c. 151B Retaliation Claim**

Ms. Dixon alleges that she was retaliated against by the IBPO, Local 382, Gerald Flynn, John Leary, and David Pender by causing her to be subjected to a severe and continuing pattern of harassment and intimidation because she complained of gender and sexual harassment, cooperated in an investigation of that harassment and discipline of male police officers who are and/or were members of the IBPO and/or Local 382, and/or pursued a complaint of discrimination and retaliation. Ms. Dixon seeks to recover under state and federal law which makes it an unlawful practice for a union or person to retaliate or otherwise discriminate against a person because she has engaged in protected activity.

To recover, Ms. Dixon must prove:

1.   She engaged in protected activity by complaining of harassment, cooperating with an investigation into that harassment and/or pursuing a complaint of discrimination and retaliation;

2.   The defendants were aware that she engaged in some or all of that protected activity;

3.   That after she engaged in protected activity, the defendants retaliated against her; and

4.   The fact that she engaged in protected activity was a motivating or determinative factor in the defendants' retaliation against her.

42 U.S.C. § 2000e-3; G.L. c. 151B, § 4(4). *Massachusetts Superior Court Civil Practice Jury Instructions*, § 5.2.7(b) (Hon. Patrick F. Brady, et al. eds, 1998); *Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, 121 (2000) ("determinative factor"); *Tate v. Dept. of Mental Health*, 419 Mass. 356, 364 (1995) ("determinative factor"); *Carter v. Commissioner of Correction*, 43 Mass. App. 212, 226 n. 13 (1997) (motivating factor); *Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 443 (1st Cir. 1997) (substantial motivating factor); *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 662–63, 672 N.E.2d 1, 7 (1996); *Wheelock College v. MCAD*, 371 Mass. 130, 138, 355 N.E.2d 309, 314–15 (1976); *Ruffino v. State St. Bank & Trust Co.*, 908 F.Supp. 1019, 1044 (D.Mass. 1995).

**INSTRUCTION NO. 7**

**Underlying Complaint Need Not be Proven**

It is unlawful to retaliate against an individual for complaining of discrimination and/or retaliation or engaging in other protected conduct, even if that individual was wrong in believing that she had been discriminated and/or retaliated against.  This means that Ms. Dixon may be able to prove that she was retaliated against for engaging in protected activity even if she is unable to prove that she had been the victim of discrimination.  Complaints of discrimination made in good faith are protected conduct, regardless of the validity of those complaints.  Thus, you may find that the defendants retaliated against Ms. Dixon, even if you find that Ms. Dixon was never subjected to discrimination or retaliation.

*Brunson v. Belchertown State School*, 9 MDLR 1295, 1325 (1987); *Galotti v. Belmont*, 6 MDLR 1669 (1984); *Oquendo v. Longmeadow*, 13 MDLR 1660, 1670 (1991).

## INSTRUCTION NO. 8

**General Atmosphere of Retaliation**

Circumstantial evidence may include evidence of a general atmosphere of retaliation by the defendants. Evidence that a defendant retaliated against other persons and/or in other matters can also support a conclusion that retaliation was a factor in this case.

*Massachusetts Superior Court Civil Practice Jury Instructions*, § 5.2.3; *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 664 (1996) ("In the absence of direct proof of retaliation, a plaintiff may introduce relevant evidence such as the demonstration of a general practice and policy of retaliation[.]"); *Lewis v. Area II Homecare for Senior Citizens, Inc.* 397 Mass. 761, 767 (1986) (agreeing that "evidence which may be relevant to the plaintiff's showing of pretext may include . . . application of certain criterion to employees of different races [and] the employer's general practice and policies concerning employment of racial minorities"); *Smith College v. MCAD*, 376 Mass. 221, 228 n.9 (1978) ("evidence of specific acts of discrimination may support an inference of discriminatory motive"); *Johansen v. NCR Comten, Inc.*, 30 Mass. App. Ct. 294, 298 (1991) (noting that the courts have recognized that "most cases of unlawful discrimination would be stitched together from hiring and discharge patterns, other acts of discrimination, and the absence of plausible explanation for the employment decision"); *Ruffino v. State Street Bank and Trust Co.*, 908 F.Supp. 1019, 1036 & n. 28 (D. Mass. 1995); *Brown v. Trustees of Boston University*, 891 F.2d 337, 350 (1st Cir. 1989); *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987).

**INSTRUCTION NO. 9**

**Mixed Motive**

If you find that Ms. Dixon has proven by a preponderance of the evidence that she was retaliated against by a defendant, and that that retaliation was motivated in part by the fact that Ms. Dixon had engaged in protected conduct, then the burden shifts to the defendant to prove by a preponderance of the evidence that he or it would have engaged in the same conduct even if Ms. Dixon had not engaged in protected activity. If you are not convinced that the defendant would have engaged in the same conduct related to Ms. Dixon even if she had not engaged in protected conduct, then you must return a verdict for Ms. Dixon.

*Massachusetts Superior Court Civil Practice Jury Instructions*, § 5.2.3(d); *Wynn & Wynn v. MCAD*, 431 Mass. 655, 669-70 (2000); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-47 (1989); *Johansen v. NCR Comten, Inc.* 30 Mass. App. Ct. 294, 300-02 (1991); *Smith College v. MCAD*, 376 Mass. 221, 227 n. 8 (1978)

**INSTRUCTION NO. 10**

**Interference with Rights**

It is illegal to "coerce, intimidate, threaten, or interfere with another person in the exercise" of that person's rights under the antidiscrimination laws.  These rights include the right to be free of discrimination and retaliation, and the right to cooperate in investigations, oppose and make complaints of discrimination and harassment and to otherwise engage in protected activity.  Ms. Dixon has alleged that the IBPO, Local 382, Gerald Flynn, John Leary and David Pender interfered with her rights under this law.  If you find that a defendant took one or more actions with the purpose of coercing, intimidating, and/or threatening Ms. Dixon so that she would not cooperate in an investigation, or oppose or file a complaint of discrimination, then you must find that that defendant interfered with Ms. Dixon's rights and you must find for Ms. Dixon on this count.

M.G.L. c. 151B, § 4(4A); *Sahli v. Bull HN Info. Sys., Inc.*, 437 Mass. 696,  774 N.E.2d 1085 (2002).

**INSTRUCTION NO. 11**

**Aiding and Abetting**

It is also illegal to aid and abet discrimination, retaliation and/or interference with rights.

What does it mean to "aid" or "abet" in this context?  It means to assist, perpetrate or allow by

knowing inaction.  Ms. Dixon has alleged that the IBPO, Local 382, Gerald Flynn, John Leary

and David Pender aided and abetted in discrimination, retaliation and interference with her rights.

If you find that a defendant did assist, perpetrate or allow by knowing inaction such conduct, you

must find for Ms. Dixon on that count.

M.G.L. c. 151B, § 4(5); *Beaupre v. Cliff Smith & Assoc. et al.*, 50 Mass. App. Ct. 480, 491-492
738 N.E.2d 753 (Mass.App.Ct. 2000); *Ruffino v. State Street Bank and Trust Co.*, 908 F. Supp.
1019 (D. Mass. 1995); *Chapin v. University of Massachusetts at Lowell*, 977 F. Supp. 72 (D.
Mass. 1997).

**INSTRUCTION NO. 12**

**Pretext**

The defendants have provided some explanations for some of their conduct.  If Ms. Dixon convinces you that an explanation asserted by a defendant is false, that finding may be used by you to infer a retaliatory motive.

*Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, (2000); *Blare v. Husky Injection Molding System Boston, Inc.*, 419 Mass. 437, 443, 446 (1994).

**INSTRUCTION NO. 13**

**Damages**

If you decide that a defendant discriminated or retaliated against Ms. Dixon you must then consider what the measure of damages is.

You may award damages in the following four areas:

1.    Lost wages up to the time of trial, often referred to as back pay;

2.    Future lost wages, often referred to as front pay;

3.    Emotional and/or physical pain and suffering; and

4.    Punitive damages.

I will define each of these categories for you.


G.L. c. 151B, § 9; *Conway v. Electro Switch Corp.*, 402 Mass. 385, 388 (1988); *Massachusetts Superior Court Civil Practice Jury Instructions*, § 5.3.1.

**INSTRUCTION NO. 14**

**Back Pay**

Ms. Dixon is entitled to back pay, or lost wages, which is the amount of her lost earnings from the date of her termination until today.  This includes all lost pay, including overtime, bonuses, employment benefits and health insurance benefits that she would have had and accumulated, but for a defendant's discriminatory or retaliatory conduct.

*Massachusetts Superior Court Civil Practice Jury Instructions*, § 5.3.2.

**INSTRUCTION NO. 15**

**Front Pay**

Ms. Dixon is entitled to front pay, which is the amount of damages resulting from the loss of future earnings and benefits that is attributable to a defendant's misconduct.  You cannot speculate in awarding front pay; rather, the determination of the amount of the award must be proven with reasonable certainty.  You should make reasonable estimates based on the evidence concerning the amount of future earnings, including salary, bonuses, and benefits that Ms. Dixon would have received but for the defendant's discrimination or retaliation.

In determining front pay you should consider and weigh the following factors:

1.   The amount of earnings, including salary and benefits that Ms. Dixon probably would have received between now and her projected retirement date;

2.   Ms. Dixon's probable date of retirement;

3.   The amount of earnings that Ms. Dixon will probably receive from another employer until her retirement.

4.   The availability of other employment opportunities; and

5.   The possibility of inflation and wage increases in the future.


*Massachusetts Superior Court Civil Practice Jury Instructions*, § 5.3.3.

**INSTRUCTION NO. 16**

**Calculations Need Not Be Exact**

The determination of back and front pay need not be calculated to a mathematical certainty.  You need only have a reasonable basis for estimating the amount of the loss of wages and benefits Ms. Dixon has suffered and will suffer in the future.

*Conway v. Electro Switch Corp.,* 402 Mass. 385, 388 & 388 n.3 (1988)

**INSTRUCTION NO. 17**

**Emotional Distress**

If you find that Ms. Dixon was discriminated or retaliated against, you may award her reasonable damages for her emotional distress. Emotional distress includes mental pain, discomfort, indignity, depression, fear, anxiety or humiliation suffered as a result of the retaliation. You may consider how much emotional distress the discrimination and/or retaliation caused and the length of time Ms. Dixon has suffered and will suffer as a result of the discrimination and/or retaliation. In awarding emotional distress damages, you should consider the effect of the unlawful discrimination and/or retaliation on Ms. Dixon, in light of Ms. Dixon's background, and mind set.

It is understood that awarding emotional distress damages is an imprecise exercise. Mathematical certainty is not required. In order to award such damages, you should use your common sense, and your evaluation of the evidence, the demeanor of Ms. Dixon, and the nature of the conduct alleged, to fairly compensate Ms. Dixon. You may award emotional distress damages even if there were other factors in Ms. Dixon's life causing her stress.

It is not necessary that a claim for emotional distress be supported by evidence from a physician. In fact "the finding of [discrimination or retaliation] alone permits the inference of emotional distress as a normal adjunct of the [defendant's] actions."

When and if you award an amount of money to fairly compensate Ms. Dixon for her emotional distress, you should be aware that damages for emotional distress are taxable as income.

*Massachusetts Superior Court Civil Practice Jury Instructions*, § 5.3.4; *Carter v. Com'r of Correction*, 43 Mass. App. 212 (1997); *Buckley Nursing Home, Inc. v. MCAD*, 20 Mass. App. 172, 182 (1985); *Doty v. Sewall*, 908 F.2d 1053, 1059 (1st Cir. 1990); *Franklin Publishing Co. v. MCAD*, 25 Mass. App. 974, 975 (1988); *Norfolk & Western R. Co. v. Liepelt*, 444 U.S. 490, 497-8 (1980); *Cummings v. Microphase Corporation*, Endorsement Order, C.A. No. 5:92-cv-384 AWT, Thompson, J. (D. Conn. September 30, 1997).

**INSTRUCTION NO. 18**

**Punitive Damages**

You may award a victim of discrimination and/or retaliation punitive damages.  The purpose of punitive damages is to punish the defendant(s) and to deter future actions of retaliation against others.  You may award punitive damages to punish a defendant if you find that he or it intentionally discriminated or retaliated against Ms. Dixon.  You may award punitive damages even if you find for Ms. Dixon but do not award any other damages.

In deciding what amount of punitive damages, if any, to award to Ms. Dixon, you should consider:

1.     How offensive was the defendant's conduct;

2.     The defendant's financial resources; and

3.     What amount would sufficiently punish the defendant so as to prevent a repetition of the discriminatory or retaliatory actions.

G.L. c. 151B, § 9; *Rowlett v. Anheuser Busch, Inc.*, 832 F.2d 194, 206-07 (1st Cir. 1987) (intentional discrimination by its very nature is outrageous and entitles a jury to consider the issue of punitive damages); *Contardo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 753 F. Supp. 406, 412 (D. Mass. 1990); *Fishman v. Clancy*, 763 F.2d 485, 489 (1st Cir. 1989); *Massachusetts Superior Court Civil Practice Jury Instructions*, § 5.3.5.

**INSTRUCTION NO. 19**

**Assault**

Ms. Dixon has alleged that she was assaulted by John Leary and David Pender.  An assault consists of an intentional creation of fear or apprehension of immediate physical harm by means of an overt gesture.  If you find that John Leary and/or David Pender took one or more actions that intentionally caused Ms. Dixon to fear physical harm, you must find for Ms. Dixon on this count.

Nolan, J. and Sartorio, L, *Tort Law*, 37 Mass. Practice § 12 (1989).

**INSTRUCTION NO. 20**

**Damages for Assault**

If you find John Leary and/or David Pender assaulted Ms. Dixon, you may award damages for any humiliation, indignity, and/or other injury, including injury to feelings, that resulted from the assault.  You may award Ms. Dixon nominal damages even if you find that there is no proof of actual damage.

Nolan, J. and Sartorio, L, *Tort Law*, 37 Mass. Practice § 13 (1989).

**INSTRUCTION NO. 21**

**Intentional Infliction of Emotional Distress**

Ms. Dixon has alleged that the IBPO, Local 382, Gerald Flynn, John Leary and David

Pender engaged in the intentional infliction of emotional distress.

To recover, Ms. Dixon must prove:

1.    that the defendant intended to cause, or should have known that his conduct would cause,

emotional distress;

2.    that the defendant's conduct was extreme and outrageous;

3.    that the defendant's conduct caused Ms. Dixon's distress; and

4.    that Ms. Dixon suffered severe distress.

*Sena v. Commonwealth*, 417 Mass. 250, 263-264 (1994) (citing *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976)).  *See also Fredette v. Allied Van Lines, Inc.*, 66 F.3d 369, 374 (1st Cir. 1995).

**INSTRUCTION NO. 22**

**Damages for Intentional Infliction of Emotional Distress**

[To be drafted]

**INSTRUCTION NO. 23**

**Defamation**

Ms. Dixon has alleged that Kenneth Lyons and the IBPO defamed her.  To recover, Ms. Dixon must prove that:

1.	the defendant published a defamatory statement of and concerning Ms. Dixon;

2.	the defendant was negligent in ascertaining whether the statement was true, false or defamatory before publishing it; and

3.	Ms. Dixon suffered actual injury or harm as a result of the publication in question.

*Massachusetts Superior Court Civil Practice Jury Instructions*, § 6.2.  *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-30 (2003) (citations omitted); *McAvoy v. Shufrin*, 401 Mass. 593, 597, 518 N.E.2d 513, 516–17 (1988); *Jones v. Taibbi*, 400 Mass. 786, 799–800, 512 N.E.2d 260, 269 (1987); *Appleby v. Daily Hampshire Gazette*, 395 Mass. 32, 35–36, 478 N.E.2d 721, 723–24 (1985); *New England Tractor Trailer Training of Conn., Inc. v. Globe Newspaper Co.*, 395 Mass. 471, 474, 480 N.E.2d 1005, 1007 (1985); *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 858, 330 N.E.2d 161, 167 (1975).

**INSTRUCTION NO. 24**

**Publication**

In the context of defamation, "published" simply means that the statement was communicated to someone other than the plaintiff. There is no requirement that the statements be communicated to a large number of people; it only needs to be communicated to one or more person.  A person who republishes a defamatory statement is just as liable as if he had originally published it.

*Massachusetts Superior Court Civil Practice Jury Instructions*, § 6.2.1. *Jones v. Taibbi*, 400 Mass. 786, 792, 512 N.E.2d 260, 264 (1987); *Brauer v. Globe Newspaper Co.*, 351 Mass. 53, 56, 217 N.E.2d 736, 739 (1966).

**INSTRUCTION NO. 25**

**Defamatory**

A statement is defamatory if it could harm Ms. Dixon's reputation in the community, or if it tends to hold Ms. Dixon up to scorn, hatred, ridicule or contempt.

*Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629, 782 N.E.2d 508 (2003)*; Correllas v. Viveiros*, 410 Mass. 314, 319 (1991).  *Massachusetts Superior Court Civil Practice Jury Instructions*, § 6.2.2.  *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 853, 330 N.E.2d 161, 165 (1975); *Sharratt v. Housing Innovations, Inc.*, 365 Mass. 141, 145, 310 N.E.2d 343, 346 (1974); *Lynch v. Lyons*, 303 Mass. 116, 119, 20 N.E.2d 953, 955 (1939); *Tobin v. Boston Herald-Traveler Corp.*, 324 Mass. 478, 488, 87 N.E.2d 116, 121 (1949); *Lyman v. New England Newspaper Publishing Co.*, 286 Mass. 258, 260, 190 N.E. 542, 543 (1934).

**INSTRUCTION NO. 26**

**Negligence**

In this context, negligence simply means that the defendant failed to exercise the degree of care in making sure that the information was true, false or defamatory that would be exercised by a reasonably prudent person in the same or similar circumstances.  The defendant is required to act reasonably in checking on the truth or falsity or the defamatory character of the statement before publishing it.

Factors for you to take into consideration in determining whether the defendant acted as a reasonably prudent person under the circumstances include the presence or absence of time constraints against verifying the statement, and the reliability of the source of the information.

*Massachusetts Superior Court Civil Practice Jury Instructions*, § 6.2.5.  *Jones v. Taibbi*, 400 Mass. 786, 799–800, 512 N.E.2d 260, 268–69 (1987); *Appleby v. Daily Hampshire Gazette*, 395 Mass. 32, 36–37, 478 N.E.2d 721, 724 (1985); *Schrottman v. Barnicle*, 386 Mass. 627, 641, 437 N.E.2d 205, 214 (1982).

**INSTRUCTION NO. 27**

**Compensatory Damages**

If you find that the defendants defamed Ms. Dixon, then you may award money damages.

The purpose of compensatory damages is to afford the equivalent in money for the actual loss

caused by the wrong of another.  Thus, in order to obtain damages, Ms. Dixon must prove that

she suffered actual injury as a result of the defendant's defamatory publication.  Actual injury

may include not only out-of-pocket loss, but also impairment to her reputation and standing in

the community, personal humiliation, shame, disgrace, and mental suffering.

You must consider what amount of money would be full, fair and reasonable based on all

the evidence. The amount of damages should be based on just and reasonable inferences, even

though there may be an element of uncertainty in your determination.

*Massachusetts Superior Court Civil Practice Jury Instructions*, § 6.4.1.  *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 860–61, 330 N.E.2d 161, 169 (1975); *Rombola v. Cosindas*, 351 Mass. 382, 385, 220 N.E.2d 919, 922 (1966); *Agoos Leather Co., Inc. v. American & Foreign Ins. Co.*, 342 Mass. 603, 608, 174 N.E.2d 652, 655 (1962); *Daniels v. Celeste*, 303 Mass. 148, 150, 21 N.E.2d 1, 2 (1939); *Sullivan v. Old Colony St. Ry. Co.*, 197 Mass. 512, 516, 83 N.E. 1091, 1092 (1908); *Dexter's Hearthside Restaurant, Inc. v. Whitehall Co.*, 24 Mass.App.Ct. 217, 220, 508 N.E.2d 113, 116 (1987).

**INSTRUCTION NO. 28**

**Special Damages**

If Ms. Dixon has proved that she has also suffered specific losses having an economic value, she is entitled to recover for those additional special damages. Special damages may include the loss of an existing advantage, such as wages from a job, employment benefits or business clients. They may also include loss of a future advantage, such as inability to get a new job or a job equivalent to the job she had. The plaintiff must prove that the defamatory publication was a substantial cause of these economic losses.

*Massachusetts Superior Court Civil Practice Jury Instructions*, § 6.4.2. *Tosti v. Ayik*, 394 Mass. 482, 496–99, 476 N.E.2d 928, 938–40 (1985); *Sharratt v. Housing Innovations, Inc.*, 365 Mass. 141, 146–47, 310 N.E.2d 343, 347 (1974); *Muchnick v. Post Publishing Co.*, 332 Mass. 304, 308, 125 N.E.2d 137, 140 (1955); *Bander v. Metropolitan Life Ins. Co.*, 313 Mass. 337, 346, 47 N.E.2d 595, 601 (1943); *Craig v. Proctor*, 229 Mass. 339, 342, 118 N.E. 647, 648 (1918); *Morasse v. Brochu*, 151 Mass. 567, 572–74, 25 N.E. 74, 76 (1890) (doctor's loss of patients willing to employ him constituted special damage).